IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY WHITE,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ALDRIDGE ELECTRIC, INC.<br>doing business as<br>ALDRIDGE ELECTRIC,<br>　　　　　　Defendant. | :<br>:<br>:<br>:　Civil No. 5:21-cv-01872-JMG<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                       **April 4, 2022**

Plaintiff Jeremy White claims that Defendant Aldridge Electric, Inc. ("Aldridge") unlawfully discriminated against him and terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* Aldridge now moves for summary judgment on all of White's claims. For the following reasons, summary judgment is granted in favor of Aldridge.

**I.     FACTUAL BACKGROUND**[1]

In December 2016, Aldridge hired White as a welder in its Bethlehem facility. (Def.'s Statement of Undisputed Facts ¶ 8, ECF No. 19-3 [hereinafter "DSOF"]; Pl.'s Response to Defendant's Statement of Facts ¶ 8, ECF No. 23-1 [hereinafter "PRSOF"].) Darryl Kohout managed the facility and supervised White. (DSOF ¶¶ 2, 10; PRSOF ¶¶ 2, 10.) Kohout was supervised, in turn, by Robert Burandt, a superintendent based out of Aldridge's Illinois headquarters. (DSOF ¶¶ 5–7; PRSOF ¶¶ 5–7.) And Burandt reported to Pat Pineau, a Fleet

---

[1]     The parties filed a Joint Appendix of exhibits. (*See* ECF Nos. 19-4, 19-5, 19-6, 19-7, 19-8, 19-9, 19-10.) The Court references the materials included in the Joint Appendix as "J.A."

Director who "give[s] guidance and direction on budgetary" and "personnel" issues. (DSOF ¶ 6; PRSOF ¶ 6; J.A. 591.)

On November 6, 2020, White attended a morning meeting with Kohout and his colleague, Mike Taylor. (DSOF ¶¶ 4, 40; PRSOF ¶¶ 4, 40.) The parties dispute what happened during that meeting: according to Aldridge, after Kohout announced a change to the work schedule, White "got in Kohout's face, cursed at him and was yelling." (DSOF ¶ 43; J.A. 513–14.) White, on the other hand, maintains that he "did not act insubordinately." (PRSOF ¶ 43; *see also, e.g.*, J.A. 121–22.) In any event, Kohout called Burandt and they "both decided to send [White] home."[2] (J.A. 514.)

As a result of the episode, White was suspended until further notice. (DSOF ¶ 65; PRSOF ¶ 65; J.A. 985.) Kohout, Burandt, and Pineau then conferred to discuss White's employment. (DSOF ¶¶ 74–76; PRSOF ¶¶ 74–76.) During those meetings, Kohout shared entries from his calendar that documented prior insubordination by White.[3] (DSOF ¶¶ 74–76; PRSOF ¶¶ 74–76; J.A. 986–1012.) Burandt and Pineau also spoke with Taylor, who reported feeling unsafe around White.[4] (J.A. 365–66, 659–60.)

On November 13, 2020, White was fired from his job at Aldridge. (Pl.'s Counter-Statement of Facts ¶ 75, ECF No. 23-1 [hereinafter "PCSOF"].) Burandt and Pineau informed

---

[2] Michael Geers, Aldridge's corporate risk manager, also participated in these discussions. (DSOF ¶ 66; PRSOF ¶ 66.)

[3] As with the November 6 incident, White denies that he engaged in any misconduct whatsoever. (*See, e.g.*, PRSOF ¶ 92.)

[4] At his deposition, Taylor recalled several instances in which White "was aggressive or agitated" with him. (J.A. 637–48.) Again, White categorically denies any misconduct. (PRSOF ¶¶ 16–28.) For example, White testified that he "never had any arguments" with Taylor. (J.A. 132–33.)

2

White of the decision via telephone. (DSOF ¶ 89; PRSOF ¶ 89.) According to White, Pineau told him that he has "mental problems" and that he "need[s] anger management[] and psychological help." (J.A. 94.)

At the time of his termination, White suffered from chronic pain syndrome, fibromyalgia, and sleep apnea. (DSOF ¶¶ 117–19; PRSOF ¶¶ 117–19.) Now, White alleges that he was fired, and treated differently, because of those disabilities. (Am. Compl. ¶¶ 31–42, ECF No. 17.) He brings "disability discrimination," "hostile work environment," and "retaliation" claims under the ADA and the PHRA. (*Id.*)

## II.   STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in

support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

White has not mustered sufficient evidence—either direct or circumstantial—to suggest that he suffered an adverse employment action because of his disabilities. A reasonable jury would also be unable to find that White experienced retaliation or a hostile working environment in violation of the ADA and the PHRA. Aldridge is therefore entitled to summary judgment.

### A. Disability Discrimination[5]

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[6] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting

---

[5] As the parties recognize, "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). The Court therefore addresses these claims together. *See, e.g.*, *Wright v. Providence Care Ctr., LLC*, No. 2:17-cv-00747, 2019 WL 4643592, at *4 n.1 (W.D. Pa. Sept. 24, 2019), *aff'd*, 822 F. App'x 85 (3d Cir. 2020).

[6] The Court is cognizant that, in 2008, Congress amended the ADA and broadened its definition of "disability." *See generally Gardner v. SEPTA*, 410 F. Supp. 3d 723, 735 (E.D. Pa. 2019). "[T]he PHRA has not been similarly amended." *Id.* at 734 n.5 (internal quotation marks and citation omitted). In any event, "[b]ecause the Court finds that [Aldridge's] Motion can be

4

*Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)).

A plaintiff can rely on direct evidence or indirect evidence of discrimination to meet this burden. Claims based on indirect evidence are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Keyes v. Cath. Charities of the Archdiocese of Phila.*, 415 F. App'x 405, 408 (3d Cir. 2011) (citation omitted). Claims premised on direct evidence proceed under the "mixed motive" framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *See Buchsbaum v. Univ. Physicians Plan*, 55 F. App'x 40, 44–45 (3d Cir. 2002).

White offers both direct and circumstantial evidence of discrimination. The Court first addresses the direct evidence and then applies the *McDonnell Douglas* framework.

1.  Direct Evidence

Proving discrimination through direct evidence is a "high hurdle." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513 (3d Cir. 1999). Direct evidence "demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* (internal quotation marks and citation omitted). "[I]f discrimination must be inferred from the employer's remarks or actions, then the evidence is not direct evidence of discrimination." *Stone v. Trader Joe's Co.*, 186 F. Supp. 3d 395, 400–01 (E.D. Pa. 2016) (internal quotation marks and citation omitted). "[S]tatements made by non-decision makers or by a decision maker unrelated to the decisional process itself are not direct evidence." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 513 (3d Cir. 2004) (citation omitted).

White contends that a comment allegedly made during his November 13, 2020

---

resolved on other grounds, the Court assumes for purposes of the instant Motion that [White] was disabled." *Willis v. Norristown Area Sch. Dist.*, 2 F. Supp. 3d 597, 606 n.11 (E.D. Pa. 2014).

conversation with Burandt and Pineau—specifically, Pineau's remark that White has "mental problems" and "need[s] anger management[] and psychological help"—is direct evidence of disability discrimination. (*See* Pl.'s Mem. 4–5, ECF No. 23.)

Even if Pineau said as much,[7] it is not direct evidence of discrimination. That is because the comment, despite White's assertions to the contrary, does not show "that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision" to terminate White. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (internal quotation marks and citation omitted). Unlike the direct evidence in cases cited by White,[8] the language here does not suggest that any adverse employment action was taken *because of* a disability.[9]

---

[7] This is a point of dispute between the parties. (*Compare* PCSOF ¶ 78, *with* Def.'s Response to Pl.'s Counter-Statement of Facts ¶ 78, ECF No. 24-1 [hereinafter "DRCSOF"].)

[8] *See Jacobs v. York Union Rescue Mission, Inc.*, No. 1:12-CV-0288, 2014 WL 6982618, at *13 (M.D. Pa. Dec. 10, 2014) (warnings made prior to termination that plaintiff was "'jeopardizing her job by taking time off,' stated directly in response to her requests for permission to miss work for physical therapy appointments," amounted to direct evidence of discrimination); *Hudson v. Guardsmark, LLC*, No. 4:12-CV-1255, 2013 WL 6150776, at *13 (M.D. Pa. Nov. 22, 2013) (denying summary judgment for defendant where "plaintiff asserts that when he asked why he was being let go, [a decisionmaker] told him that was because he was missing too much time from work, even though she knew that he had taken time off to address a matter relating to his mental health disability"); *Wells v. Cincinnati Child.'s Hosp. Med. Ctr.*, 860 F. Supp. 2d 469, 479 (S.D. Ohio 2012) (finding direct evidence of discrimination where supervisor "indicated in her deposition that Plaintiff's impairment or impairments formed the basis of the decision not to reinstate her").

[9] In his deposition, White recapped the November 13 conversation as follows: "I don't remember exactly word for word, but [Kohout]—you know, told them that, obviously, that I was insubordinate or—or whatever, and they—or he wanted me terminated. . . . We started our conversation and Pat Pineau said we came to—I don't remember it word for word, but we came to the agreement to terminate your employment and I was in awe. I was like—and he went on to say, you know, along the lines of this has happened too many times now and I was just like awestruck. I didn't know what to say. And Pat Pineau said to me that I really have problems. And I said, well, what do you mean? He goes you have mental problems. You need anger management, and psychological help. You really need to see somebody. And I didn't know what to say to that." (J.A. 93–94; *see also* PRSOF ¶ 78 ("During this termination discussion, Mr. Pineau

6

"Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 786 (3d Cir. 2007) (internal quotation marks and citation omitted). White's evidence does not meet that standard. *Cf. Ward v. City Lighting Prods. Co.*, No. 20-208, 2021 WL 1720661, at *4 (W.D. Pa. Apr. 30, 2021) ("[C]omment [that] demonstrates . . . an awareness of [a disorder] . . . is not direct evidence that [plaintiff] was terminated because of her condition.").

    2.    <u>Indirect Evidence</u>

"Where, as here, there is no direct evidence of discrimination, we analyze the discrimination claim under the burden-shifting paradigm set forth in *McDonnell Douglas*." *Aguilera v. Davis*, 725 F. App'x 190, 192 (3d Cir. 2018). That framework consists of three steps. First, "the plaintiff has the burden to make a prima facie showing of discrimination; the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action; and the plaintiff must then demonstrate by a preponderance of the evidence that the proffered explanation is pretextual." *Id.* at 192 n.2 (citing *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007)).

Here, White alleges that his "termination was based on invidious discrimination," while Aldridge maintains that White was terminated because "he was repeatedly insubordinate and confrontational at work, and especially on November 6, 2020." (*Compare* Pl.'s Mem. 24, *with* Def.'s Mem. 12, ECF No. 19-1.) Even assuming, *arguendo*, that White has satisfied his prima facie burden, he has not shown pretext. Stated differently, White "has failed to provide evidence that would allow a factfinder to disbelieve [Aldridge's] non-discriminatory reason for firing [him]

---

told Mr. White, 'you have mental problems; you need anger management and psychological help.'").)

or to determine that discrimination was 'more likely than not a motivating or determinative cause' of [his] termination." *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 199 (3d Cir. 2018) (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

"Regarding pretext, a plaintiff . . . may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 198 (emphasis in original) (citation omitted). "A plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

White makes several arguments in hopes of showing pretext. First, he "completely disputes" the events of November 6. (Pl.'s Mem. 26.) This argument—that White "never engaged in the conduct that he was accused of"—misses the mark. *Campo v. Mid-Atl. Packaging Specialties, LLC*, --- F. Supp. 3d ----, 2021 WL 4453613, at *17 (E.D. Pa. Sept. 29, 2021). "[P]retext is not shown by evidence that the employer's decision was wrong or mistaken." *Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 155 (3d Cir. 2013) (internal quotation marks and citation omitted). The claim that Aldridge "fabricated" White's insubordination (Pl.'s Mem. 26), then, "simply amounts to [White] saying that [Aldridge] is wrong or mistaken, which is not enough for him to overcome his burden at the summary judgment stage." *Campo*, 2021 WL 4453613, at *17 (internal quotation marks and citation omitted); *see, e.g.*, *Arana v. Temple Univ. Health Sys.*, 776 F. App'x 66, 70 (3d Cir. 2019) ("We focus not on what actually happened, but on what the

8

employer honestly believed." (citation omitted)); *Hennessey v. Dollar Bank, FSB*, 833 F. App'x 961, 966 (3d Cir. 2020) ("[T]he courts do not sit as a super-personnel department that reexamines an entity's business decisions." (internal quotation marks and citation omitted)).

Second, White highlights that he worked for Aldridge "for almost four years without receiving any written discipline for any reason." (Pl.'s Mem. 26.) This, too, does not show pretext. "Employers who are dissatisfied with the performance of their employees sometimes voice express criticism to those employees, but employers do not always do so." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997) (citation omitted). As such, "lack of notice or information about problems with performance does not constitute evidence of pretext." *Mercado v. Donahoe*, 487 F. App'x 15, 18 (3d Cir. 2012) (citation omitted).

Third, White argues that he was replaced by a non-disabled employee. (Pl.'s Mem. 25.) Even if true, that does not establish pretext. *See, e.g.*, *Hamilton v. Frank C. Videon, Inc.*, No. 16-4547, 2019 WL 3801952, at *6 (E.D. Pa. Aug. 12, 2019) ("[P]laintiff's argument that he was replaced with a non-disabled employee, while potentially sufficient at the *prima facie* case stage, is insufficient to establish pretext." (citing *Francis v. Lehigh Univ.*, No. 10-CV-4300, 2013 WL 787089, at *9 (E.D. Pa. Mar. 1, 2013), *aff'd*, 561 F. App'x 208 (3d Cir. 2014)).

Fourth, White points to the timing of his termination. (Pl.'s Mem. 25.) White disclosed his medical symptoms to Kohout in March 2020. (PCSOF ¶¶ 37–39; DRCSOF ¶¶ 37–39.) White secured accommodations for those conditions, including time off from work, as late as August 2020. (PCSOF ¶ 49; DRCSOF ¶ 49.) Three months later, White was terminated. (PCSOF ¶ 75.)

That timeline is not probative of discriminatory intent. "The timing of an employee's dismissal may raise an inference that an employer's purported reasons for terminating him were pretextual." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 639 (3d Cir. 1993). "The weight

of temporal evidence is context-specific and 'must be considered with a careful eye to the specific facts and circumstances encountered.'" *Proudfoot v. Arnold Logistics, LLC*, 59 F. Supp. 3d 697, 709 (M.D. Pa. 2014) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)), *aff'd*, 629 F. App'x 303 (3d Cir. 2015).  Here, "the critical episode that allegedly precipitated [White's] termination"—his misconduct on November 6, 2020—"occurred in the intervening period, between the two relevant dates."  *Id.*  In other words, White's alleged behavior on November 6 effectively severed any causal link between the disclosure of his impairments in March and receipt of accommodations in August, and his termination in mid-November.  "The chronological sequence of events on record," therefore, "does not raise an inference of pretext."  *Id.*

Fifth, White asserts that Aldridge "has given multiple contradictory versions of who made the decision to suspend and terminate [him]."  (Pl.'s Mem. 25.)  In White's estimation, Aldridge "has attempted to cover up Kohout's involvement in the decision."  (*Id.*)  Pretext may be found where the employer "hid[es] the identity of the final decisionmaker."  *DeCecco v. UPMC*, 3 F. Supp. 3d 337, 373 (W.D. Pa. 2014).  But this is not a case where Aldridge, as the employer, has concealed or otherwise failed "to identify who actually decided to terminate Plaintiff."  *Roehrig v. W.G. Tomko, Inc.*, No. 15-146, 2016 U.S. Dist. LEXIS 63045, at *10 (W.D. Pa. May 12, 2016) ("Defendant's inability to identify precisely who terminated Plaintiff supports denying Defendant's summary judgment motion.").  Rather, Aldridge's discovery responses provide that "Michael Geers, Darryl Kohout, Robert 'Bobby' Burandt, and Patrick 'Pat' Pineau participated in the decision to terminate Plaintiff's employment."  (J.A. 878; *see also* PCSOF ¶ 97; DRCSOF ¶ 97.)

That there is some "inconsistency in the testimony as to who was actually the ultimate

decisionmaker is not, by itself, fatal to [the] motion for summary judgment." *McManamy v. Select Med. Corp.*, No. 14-1463, 2016 WL 6879556, at *7 (W.D. Pa. Nov. 22, 2016).  In his deposition, Kohout stated that he did not make or participate in the decision to terminate White.  (J.A. 518; *see also* PCSOF ¶ 100.)  Pineau, on the other hand, testified that he "had multiple phone calls" with Burandt and Kohout to discuss White's termination.  (J.A. 604.)  But this discrepancy "in no way undermines [Aldridge's] written discovery response." *McNneil v. Trustees of Univ. of Pa.*, No. 18-1750, 2019 WL 2024923, at *9 (E.D. Pa. May 8, 2019).  The discovery response is corroborated by White's termination notice, which provides that "[a]fter long discussion with Darryl [Kohout], Bob Burandt and Pat Pineau, it was decided that for safety reasons, [White] can no longer work for Aldridge."  (J.A. 1027; *see also* PCSOF ¶ 99; DRCSOF ¶ 99.)  And it is undisputed that, in the immediate leadup to White's termination, Kohout reviewed White's prior insubordination with Pineau and Burandt.  (*See* DSOF ¶ 74; PRSOF ¶¶ 74–76.)  Taken as a whole, the record simply does not support the argument that Aldridge "was attempting to conceal who the real decisionmakers were." *McNneil*, 2019 WL 2024923, at *9; *see also Messimer v. Albright Care Servs.*, No. 4:12-CV-02143, 2017 WL 552736, at *9 (M.D. Pa. Feb. 10, 2017) (rejecting pretext argument where employer "did not hide the identity of the employees involved in the termination decision").

Sixth, White asserts that Aldridge has provided "[i]nconsistent explanations regarding the alleged reason for termination."  (Pl.'s Mem. 25.)  "It is true that inconsistency is indicative of pretext." *Dowling v. Citizens Bank*, 295 F. App'x 499, 502 (3d Cir. 2008) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  In this case, however, Aldridge's justifications have been completely consistent.  When Aldridge fired White, it proffered the justification that it was because he "has a noted history of work disruption through violent outbursts."  (J.A. 1027.)

Aldridge again forwarded this justification in proceedings before the Equal Employment Opportunity Commission and throughout this litigation. (*See, e.g.*, J.A. 1057 ("Due to the insubordination, Aldridge decided to terminate Mr. White for Cause.").) And White acknowledged that his alleged insubordination was mentioned during the November 13 call in which he learned of his termination. (*See* J.A. 93 ("Darryl – you know, told [Burandt and Pineau] that, obviously, that I was insubordinate or – or whatever, and they – or he wanted me terminated."), 94 ("[Pineau] went on to say, you know, along the lines of this has happened too many times now . . . .").) White's pretext argument about inconsistent reasons for his termination therefore falls short.

Finally, White emphasizes that he was the victim of "blatantly discriminatory comments" and "negative treatment . . . motivated by invidious discrimination." (Pl.'s Mem. 24–25.) Pretext may be found where a plaintiff "show[s] that the employer has previously discriminated against h[im]." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998) (citing *Fuentes*, 32 F.3d at 765). That said, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) (citation omitted). "Occasional insults, teasing, or episodic instances of ridicule are not enough [to create an inference of discrimination]." *Proudfoot*, 59 F. Supp. 3d at 710 (internal quotation marks and citation omitted).

During his deposition, White recalled that Kohout's "demeanor" and "attitude" changed once he learned of White's medical conditions in March 2020. (J.A. 60 ("[H]is whole demeanor and attitude changed towards me."), 67 ("[Kohout's] demeanor and his attitude towards me changed in March of '20 . . . .").) Kohout "would pick at" White and "try to start a confrontation

by comments." (J.A. 67; *see also* PCSOF ¶ 51; DRCSOF ¶ 51.) For example, Kohout "was very short, to the point, nasty, had very rude comments, personal comments, [and] would make faces at [White]." (J.A. 73–74; *see also* PCSOF ¶ 53; DRCSOF ¶ 53.) He repeatedly remarked that White was "always sick," "always out," and "always seem[s] to get sick over the weekend." (J.A. 908; *see also* PCSOF ¶ 55; DRCSOF ¶ 55.) He commented that White needed hearing aids. (*See, e.g.*, J.A. 75.) He told White to "look into changing jobs" in either February or March 2020 (J.A. 221); called White a "piece of shit" in June 2020 (J.A. 123; *see also* PCSOF ¶ 63; DRCSOF ¶ 63); and mocked the fact that White soiled himself at work in either July or August 2020.[10] (J.A. 82, 134.) And, "[r]ight before" White's termination, Kohout allegedly said "[i]t's either you or me." (J.A. 71.)

As an initial matter, "under Third Circuit precedent, a plaintiff's uncorroborated testimony about discriminatory treatment cannot—on its own—demonstrate invidious intent at the summary judgment stage." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 389–90 (E.D. Pa. 2013) (citing *Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002)).[11] Regardless, Kohout's comments—while unsavory—qualify as stray remarks "unrelated to the decision process." *Ezold*, 983 F.2d at 545 (citation omitted); *see also Connolly v. Pepsi Bottling Grp., L.L.C.*, No. 06-1462, 2008 WL 4412090, at *12 (W.D. Pa. Sept. 22, 2008) (recognizing that "stray remarks, standing alone," do not "establish pretext under the second prong of the *Fuentes* test"), *aff'd*, 347 F. App'x

---

[10] On another occasion, Kohout allegedly "rammed a piece of tooling" into White, which injured White's hip. (J.A. 68.) However, White did not pinpoint when this incident occurred. He instead acknowledged that Kohout engaged in such "unsafe acts" during the "first three, four months of [his] employment." (J.A. 69.) Without additional detail or context, a reasonable jury could not conclude that this episode reflects disability discrimination.

[11] Taylor testified that he never witnessed Kohout "scream" or "curse" at White. (J.A. 653.) William Serementis, another of White's former colleagues, similarly acknowledged that White never "express[ed] any complaints or concerns . . . about Mr. Kohout." (J.A. 706.)

757 (3d Cir. 2009). The comments are entirely disconnected from the investigation into White's insubordination that ultimately prompted his termination. *Cf. Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241 (3d Cir. 2011) (discounting stray remarks "completely unrelated to the investigation regarding [plaintiff's] violation of [company] Policy," which precipitated plaintiff's termination); *Udasco-Kist v. Thomas Jefferson Univ. Hosps., Inc.*, No. 19-3176, 2021 WL 254584, at *7 (E.D. Pa. Jan. 25, 2021) (discounting stray remark made by decisionmaker where there was no evidence that the decisionmaker "made the comment to the other decisionmakers or that any decisionmaker considered . . . the comment in making their decision to terminate Plaintiff"); *Gill v. BH Media Grp., Inc.*, No. 16-9155, 2019 WL 585427, at *11 (D.N.J. Feb. 13, 2019) (rejecting pretext argument where plaintiff did "not indicate how . . . comments were related to the decision to terminate her"). And even assuming that Kohout's comments expose a disability-related bias, they do not otherwise suggest that Aldridge's justification for terminating White—White's insubordination—was pretext for disability discrimination. *Cf. Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 330–32 (E.D. Pa. 2017).

Accordingly, White "has failed to provide evidence that would allow a factfinder to disbelieve [Aldridge's] non-discriminatory reason for firing [him] or to determine that discrimination was 'more likely than not a motivating or determinative cause' of [his] termination." *Hatch*, 755 F. App'x at 199 (quoting *Tomasso*, 445 F.3d at 706).

**B. Retaliation**

"For a retaliation claim under the Disabilities Act, we use the same burden-shifting framework as a disability discrimination claim." *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 601 (E.D. Pa. 2019) (citations omitted); *see also Wells v. Retinovitreous Assocs., Ltd.*, 702 F. App'x 33, 35 (3d Cir. 2017) ("Claims of retaliation under the ADA, . . . and PHRA are analyzed

14

under the *McDonnell Douglas* burden-shifting framework.").

Even assuming, *arguendo*, that White has established a prima facie case of retaliation,[12] he has not shown pretext. For the reasons explained above, White has not shown that Aldridge's legitimate, nondiscriminatory reason for his suspension and termination was pretextual. *See, e.g.*, *Parrotta*, 363 F. Supp. 3d at 602. This Court therefore grants Aldridge summary judgment on White's retaliation claims.

### C. Hostile Work Environment

"To establish a hostile work environment claim under the ADA and the PHRA, a plaintiff must prove that: (1) [he] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Hatch*, 755 F. App'x at 201–02 (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).

White points to Kohout's allegedly "discriminatory comments and treatment" in support of his hostile work environment claim. (Pl.'s Mem. 36; *see supra* pp. 12–14.) Aldridge contends that this conduct is insufficiently severe or pervasive. (Def.'s Mem. 11.) The Court agrees with Aldridge.

To determine whether harassment is sufficiently severe or pervasive, "courts consider the

---

[12] To establish a prima facie case of retaliation, "a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Gardner*, 824 F. App'x at 107 (internal quotation marks and citation omitted).

totality of the circumstances." *Hatch*, 755 F. App'x at 202. "Generally, courts look to whether a workplace was 'so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of [the harassed employees].'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). "[O]rdinary tribulations of the workplace, such as the sporadic use of abusive language, [] jokes, and occasional teasing are not enough to sustain a hostile work environment claim." *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017) (internal quotation marks and citation omitted); *see also Canada v. Samuel Grossi & Sons, Inc.*, 476 F. Supp. 3d 42, 60 (E.D. Pa. 2020) ("[I]nsensitivity alone does not amount to harassment . . . ." (internal quotation marks and citation omitted)).

On their face, several of Kohout's allegedly discriminatory remarks—namely, Kohout calling White a "piece of shit" and saying "[i]t's either you or me" (J.A. 71, 123)—are disability neutral on their face. *See Ballard-Carter v. Vanguard Grp., Inc.*, No. 15-05370, 2016 WL 3997059, at *8 (E.D. Pa. July 26, 2016) (rejecting hostile work environment claim where, "[o]n their face, a number of [the] allegedly harassing comments were not attacks on [plaintiff's] hearing impairment"), *aff'd*, 703 F. App'x 149 (3d Cir. 2017); *cf. Bolton v. Bay Valley Foods, LLC*, No. 3:17-cv-69, 2020 WL 1853505, at *14 (W.D. Pa. Apr. 13, 2020) ("A supervisor's use of profanity . . . on multiple occasions is not severe or pervasive conduct sufficient to create a hostile work environment." (citations omitted)). But even when viewed alongside the other comments and conduct attributed to Kohout, they do not "satisfy the 'high' threshold of the 'severe or pervasive' element." *Ballard-Carter*, 2016 WL 3997059, at *8 (quoting *Greer v. Mondelez Glob. Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014)).

For example, telling White that he needed hearing aids and that he should "look into changing jobs," though ill-mannered, does not create a hostile work environment. *See Ballard-*

*Carter*, 703 F. App'x at 151–52 (concluding that "repeated comments about [plaintiff's] hearing difficulty" were insufficient to sustain a hostile work environment claim); *Perry-Hartman v. Prudential Ins. Co. of Am.*, No. 17-cv-4732, 2021 WL 3077551, at *20 (E.D. Pa. July 20, 2021) (finding insufficient evidence to support hostile work environment claim even where supervisor "effectively t[old] Plaintiff that if she exhibited signs of her disability she should consider finding another job"). The alleged remarks that White was "always out" or "always sick" also fail to establish a hostile work environment. *See, e.g.*, *Torres v. Cnty. of Berks*, No. 5:17-cv-01890, 2018 WL 564406, at *11–12 (E.D. Pa. Jan. 26, 2018) (comments allegedly made by plaintiff's coworkers, such as "oh, you're here today," "oh, you showed up today," "wow, you actually work here," "oh, you made it to work today," and "I wish I had a doctor that would put me out of work for one month," were insufficient to create hostile work environment); *Walton v. Mental Health Ass'n of Se. Pa.*, No. 96-5682, 1997 WL 717053, at *13 (E.D. Pa. Nov. 17, 1997) (holding that alleged comments made by plaintiff's supervisor, such as "you have to separate your problems, symptoms from the project," "you have to learn to manage your illness," "you have to make a decision of either you can work or you're either too sick to work," and "people with your symptoms are manic depressive," were neither severe nor pervasive), *aff'd*, 168 F.3d 661 (3d Cir. 1999); *Vanhook v. Cooper Health Sys.*, No. 19-14864, 2021 WL 2186989, at *9 (D.N.J. May 28, 2021) (Diamond, J.) (comments allegedly made by plaintiff's supervisors and managers, such as "some people are always sick or some people have excuses" and "oh, you're going to be out again," did not make out a hostile work environment); *cf. Barclay v. Amtrak*, 240 F. App'x 505, 509 (3d Cir. 2007) ("[W]e have rejected a theory of harassment so broad as to dictate that any time a supervisor harasses an employee for absences the employee claims are due to a disability, that harassment is *based* on the employee's disability under the ADA." (emphasis in original)). And the allegations

17

that Kohout "had very rude comments," "would make faces," and mocked White for soiling himself amount to offhand comments and isolated incidents that, while inappropriate for the workplace, are neither severe nor pervasive. *See, e.g.*, *Washington v. Se. Pa. Transp. Auth.*, No. 19-4213, 2021 WL 2649146, at *25 (E.D. Pa. June 28, 2021) (finding conduct insufficiently severe where "Plaintiff complained of [coworkers] embarrassing him, 'setting him up for failure,' acting 'very rude' towards him, alienating him, yelling in a 'smug' manner, . . . and 'eye rolling, teeth sucking, [and] loud sighs' when he talked to them"); *cf. Ventura v. Montclair State Univ.*, No. 08-5792, 2011 WL 6339656, at *11 (D.N.J. Dec. 19, 2011) (holding that plaintiff "has not raised a genuine issue of material fact on his claim of severe or pervasive discriminatory harassment" where he "paint[ed] a picture of a supervisor who at times mocked him"). In sum, even when taken together, Kohout's conduct was insufficiently severe or pervasive to support White's hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, Aldridge's Motion for Summary Judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge